**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello**

Civil Action No. 21-cv-03040-CMA-NRN

CHRISTINE HORN,

   Plaintiff,

v.

CSAA GENERAL INSURANCE COMPANY, *d/b/a* AAA Insurance Company, and
AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY,

   Defendants.

---

**ORDER DENYING DEFENDANT CSAA'S MOTION FOR DETERMINATION OF QUESTION OF LAW**

---

This matter is before the Court on Defendant CSAA General Insurance Company, d/b/a AAA Insurance Company's ("CSAA") "Motion for Determination of Question of Law" (Doc. # 23) which the Court construes as Motion for Partial Summary Judgment under Fed. R. Civ. P. 56.[1]

---

[1] CSAA filed this Motion under Fed. R. Civ. P. 50(a)(2), which reads "[a] motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment." (Doc. # 23 at 4.) However, interpreting subdivision (a)(2) in context of the entire Rule 50, it is clear such a motion is only procedurally proper after a "party had been fully heard on an issue during a jury trial." Fed. R. Civ. P. 50(a)(1); *see Fogel v. Palomino*, No. 14-cv-00880-KLM, 2016 WL 9045844, at *3 (D. Colo June 6, 2016). Counsel should be aware of the procedural impropriety of their Motion because Magistrate Judge Mix previously denied a similar pre-trial Rule 50 motion filed by a party represented by the same law firm. *Moore v. State Farm Mut. Auto Co.*, No. 19-cv-02410-KLM, 2021 WL 1406020, at *2-3 (D. Colo. Apr. 14, 2021). While the Court will rule on the merits of the motion, Counsel is advised that future procedurally improper motions will be summarily denied.

# I. BACKGROUND

## A. FACTUAL BACKGROUND

This is an insurance coverage dispute arising from a car accident. The following facts are undisputed. Plaintiff, Christine Horn, was injured in a car accident on September 1, 2019. (Doc. # 14 at ¶ 5.) The at-fault driver was Dorothy Marquez. (*Id.* at ¶ 5.) At the time of the accident, Plaintiff was the passenger in a 2017 Jeep Renegade ("Jeep") driven by Emily Alsen. (*Id.* at ¶ 5.) The Jeep was owned by Daniel Levitt. (Doc. # 23 at 2.)

At the time of the accident the following insurance provisions were in place: (1) Ms. Marquez was insured through State Farm with liability limits of $100,000 per person or $300,000 per accident (Doc. # 14 at ¶ 7); (2) Plaintiff was insured under a policy issued by American National Property and Casualty Company ("ANPAC") with underinsured motorist ("UIM") coverage limits of $250,000 per person or $500,000 per accident (*Id.*); and (3) Ms. Alsen and Mr. Levitt were insured through CSAA with UIM coverage of $250,000 per person or $500,000 per accident (Doc. # 23 at 2). The Jeep was a listed vehicle on Ms. Alsen's CSAA policy (*Id.*). Plaintiff submitted an insurance claim to Ms. Marquez's insurance carrier. (Doc. # 6 at ¶¶ 17-18.) With the consent of CSAA and ANPAC, State Farm paid $100,000 to settle the claim. (*Id.* at ¶¶ 21-25.) According to Plaintiff, the damages she sustained in the accident exceeded Ms. Marquez's $100,000 in insurance coverage. (*Id.* at ¶ 51.) Therefore, she submitted a claim for UIM benefits to her own insurer, ANPAC, and to Ms. Alsen's insurer, CSAA. (*Id.* at ¶¶ 19-20.)

**B.     RELEVANT CONTRACT LANGUAGE**

CSAA's policy with Ms. Alsen contains an "Other Insurance" clause which provides:

> If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part of the policy:
> 1. Any insurance we provide with respect to a vehicle:
>    a. You do not own, including any vehicle while used as a temporary substitute for "your covered auto"; or
>    b. Owned by you or any "family member" which is not insured for this coverage under this policy;
>
> shall be excess over any collectible insurance providing such coverage on a primary basis.

(Doc. # 23-3 at 7.) The Definitions section of CSAA's policy states:

> Throughout this policy, "you" and "your" refer to:
> 1. The "Named Insured" shown in the Declarations; and
> 2. The spouse, "domestic partner" or partner in a "civil union", if a "resident" of the same household.

(Doc. # 23-3 at 1.) On the subsequent page, the policy also states, "Other words and phrases are defined. They are in quotation marks when used. Otherwise, the plain meaning of the word applies." (*Id.* at 2.)

ANPAC's policy with Plaintiff also contains an "Other Insurance" clause as it relates to underinsured and UIM coverage. That clause states:

> When an insured person is occupying a motor vehicle other than your insured car, any insurance under this Part is excess over any uninsured or underinsured motorist coverage available to the insured person.
>
> If there is other similar insurance by this Part, we will pay our proportionate share as our limit of liability bears to the total limits of all applicable similar insurance, and we will not be liable for more than our pro-rata share of the total coverage available.

(Doc. # 23-4 at 2.)

3

CSAA now seeks judgment as a matter of law that both CSAA's and ANPAC's "Other Insurance" clauses covered Plaintiff at the time of the accident at issue. (Doc. # 23 at 2.) CSAA argues the two clauses are therefore mutually repugnant and void, resulting in both policies being co-primary. (*Id.*) CSAA therefore believes both companies should be required to cover Plaintiff's damages in excess of $100,000 on a pro-rata basis. (*Id.*) ANPAC counters that CSAA's excess clause does not apply under the instant circumstances because Plaintiff was injured while a passenger in a CSAA-covered vehicle. (Doc. # 26 at 4, 13-14.) Therefore, ANPAC argues, CSAA's UIM coverage is primary. (*Id.* at 4.)

## II.     LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbot Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 118 F.3d 837, 839 (10th Cir. 1997). When reviewing motions for summary judgment, a court may not resolve issues of credibility, and must view the evidence in the light most favorable to the nonmoving party—including all reasonable inferences from that evidence. *Id*. However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

4

The moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id*. In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claims; rather, the movant need simply point the court to a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 644, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant meets its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy this burden. *Id*. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence from which a rational trier of fact could find for the nonmoving party." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id*. Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### III.   DISCUSSION

The parties agree that there is no genuine dispute of material fact as it relates to the Motion. (Doc. # 26 at 13 ("The facts necessary to resolve CSAA's motion are not in dispute.")). Thus, the Court may rule on the applicability of CSAA and ANPAC's "Other

Insurance" clauses to the facts of the case. *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002) (observing that "[t]he interpretation of an insurance policy is a matter of law" in Colorado).

### A.  APPLICABLE LAW

There is no dispute that Colorado law governs the interpretation of the insurance contracts because both Plaintiff and Ms. Alsen were residents of Colorado at the time of the accident, Colorado has the "most significant relationship" to the case. (Doc. ## 23 at 4; 26 at 6); *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372 (Colo. 1979). In diversity actions such as this one, the Court determines issues of state law as it believes the highest state court would decide them. *See Clark v. State Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234, 1240 (10th Cir. 2003). "Colorado recognizes a strong policy of freedom of contract." *Allstate Ins. Co. v. Avis Rent-A-Car System, Inc.*, 947 P.2d 341, 346 (Colo. 1997) (citing *City & Cty. of Denver v. Dist. Ct.*, 939 P.2d 1353, 1361 (Colo. 1997)). Courts must construe contracts in the manner which "best effectuates the intent of the parties." *Id.* "[An] insurance contract's terms are to be construed as they would be understood by a person of ordinary intelligence." *State Farm Mut. Auto. Ins. Co. v. Nissen*, 851 P.2d 165, 167 (Colo. 1993). "[S]trained constructions should be avoided." *Id.* at 169 (quoting *Simon v. Shelter General Ins. Co.*, 842 P.2d 236, 239 (Colo. 1992)).

Both CSAA and ANPAC's "Other Insurance" clauses are examples of "excess clauses." (Doc. ## 23-3 at 7; 23-4 at 2). An excess clause "attempts to shift the priority of payments as between coverages when two or more policies apply to the liability."

6

*Avis Rent-A-Car System, Inc.*, 947 P.2d at 346. "When one insurance policy is 'primary' and the other policy is 'excess,' the primary insurer pays for damages up to the limits of its policy; when that policy is exhausted, the excess insurer covers any remaining damages up to the limits of its policy." *Id.* Because Colorado's mandatory insurance laws do not contain a primary-insurance requirement, excess clauses are generally valid in Colorado. *Shelter Mut. Ins. Co. v. Mid-Century Ins. Co.*, 246 P.3d 651, 660 (Colo. 2011).

"Where there are valid, competing excess clauses, [the Colorado Supreme Court] does not give full effect to both of them, as that would leave the insured with no coverage for liability; this is an absurd result that violates public policy." *Id.* at 666. In such instances, "both clauses are mutually repugnant and, as such, are void." *Id.* Accordingly, "both insurers are co-primary, and must share the losses equally until the limits of either policy are exhausted." *Id.* at 655-56; *see also Baker v. Allied Prop. & Cas. Ins. Co.*, 939 F. Supp. 2d 1091, 1101 (D. Colo. 2013). However, mutual repugnancy will only be found where "two or more policies of the same type each contains an excess clause, and they cannot be reconciled with each other." *Allstate Ins. Co. v. Frank B. Hall & Co. of Cal.*, 770 P.2d 1342, 1345 (Colo. 1989).

**B.     ANALYSIS**

CSAA contends the definition of the word "you" and the policy's language regarding words which appear in quotation marks versus words which do not is relevant to interpreting the "Other Insurance" clause outlined above. (Doc. # 23 at 5.) Because the word "you" does not appear in quotation marks in the "Other Insurance" clause,

CSAA insists the "plain meaning" of "you" applies. (*Id*. at 5-7.) According to CSAA, it therefore follows that "it is logical that the UIM coverage provided by the CSAA policy is to be considered excess to other applicable insurance, as Plaintiff was not the owner of the CSAA insured vehicle at the time of the accident." (Doc. # 23 at 6-7.)

CSAA however never provides a dictionary or plain meaning definition of the word "you." Rather, CSAA seems to imply that "you" refers to anyone reading the contract. In its Motion, CSAA writes:

> CSAA submits that when the "other insurance" clause of the CSAA policy is read using the plain meaning of the word *you*, it is logical that the UIM coverage provided by the CSAA policy is to be considered excess to other applicable insurance, as Plaintiff was not the owner of the CSAA insured vehicle at the time of the accident.

(Doc. # 23 at 6-7.) Further, in its Reply Brief, CSAA states "when reading CSAA's other insurance clause as written, it is clear that when CSAA provides coverage for a vehicle that the reader, here Plaintiff, does not own, the coverage shall be excess over any collectible insurance providing such coverage on a primary basis." (Doc. # 27 at 4-5.)

CSAA's suggested reading of their contract is unpersuasive. A contract is a document which purports to bind parties to its terms. *See Contract*, Black's Law Dictionary (11th ed. 2019). As such, the word "you" as it appears in a contract drafted by a corporation generally refers to the individuals who consent to be bound to the contract as indicated by signing. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Stein*, 940 P.2d 384, 389 (Colo. 1997) (interpreting "you" as used in a car insurance policy to mean the insured); *U.S. Fidelity & Guar. Co. v. Budget Rent-A-Car Systems, Inc.*, 842 P.2d 208, 211 (Colo. 1992) (resolving that the word "you" in an "Other Insurance" clause

"unambiguously" refers to the "insured person"). Who the word "you" as used in a contract refers to cannot change depending on who is reading the document. Plaintiff was not a party to CSAA's contract with Ms. Alsen and Mr. Levitt and therefore cannot be bound by its terms. (Doc. # 23-2.)

Whether or not the word "you" took on its plain meaning or the meaning defined in CSAA's policy is immaterial because under the instant circumstances both definitions are the same. As discussed above, the plain meaning of the word "you" as used in an insurance contract and as "would be understood by a person of ordinary intelligence" refers to the insured parties. *Nissen*, 851 P.2d at 167. CSAA's policy language also defines the word "you" as "[t]he 'Named Insured' shown in the Declarations." (Doc. # 23-3 at 1.) The insured parties under CSAA's contract were Ms. Alsen and Mr. Levitt, the owner of the Jeep. (Doc. # 23-2.)

With this understanding in mind, the Court turns to the language of CSAA's "Other Insurance" clause. This clause provides that if there is other applicable UIM insurance,

> Any insurance we provide with respect to a vehicle:
> a. You do not own . . . ; or
> b. Owned by you or any "family member" which is not insured for this coverage under this policy; shall be excess . . . ."

(Doc. # 23-3 at 7.) "You"—referring to the insured parties—as used in this clause therefore includes Mr. Levitt. As the Jeep was owned by Mr. Levitt and was insured under the policy, the Court finds as a matter of law that CSAA's excess clause does not apply in the present situation.

## IV.    CONCLUSION

For the foregoing reasons, Defendant CSAA's Motion for Determination of Question of Law (Doc. # 23) is DENIED. Therefore, CSAA's policy is primary and ANPAC's UIM coverage is excess.

DATED: November 22, 2022

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
Senior United States District Judge